The Attorney General is in receipt of your letter of April 6, 1979, wherein you ask, in substance, the following question: May the State Employees Group Health and Life Insurance Board request and accept bids for a contract to be claims administrator for all or any part of the State Health and Life Insurance Plans, the terms of which span a three year period but are contractually divided into three one-year bids ? Your letter makes reference to Attorney General Opinion No. 79-77 (March 1, 1979) which held that the provisions of 74 O.S. 1306 [74-1306](3) (1978) required that contracts for a Claims Administrator are subject to the bidding process through the Board of Public Affairs. The Oklahoma Legislature, in 1977, placed the State Employee insurance programs on a "self-insured" basis. Laws 1977, c. 261 1 et seq. The State Employees Group Health and Life Insurance Board (hereafter the "Board") is authorized to contract for a claims administrator to process claims arising under the several group insurance plans. The insurances are financed under the provisions of 74 O.S. 1312 [74-1312](1) (1977) wherein employee contributions, appropriations and dividend payments are deposited in the State Treasury in a fund known as "Health and Life Insurance Reserve Fund" (hereafter the "Fund"). The nature of the Fund is described in 74 O.S. 1312 [74-1312](2) (1977): (2) The fund herein created shall be a continuing fund not subject to fiscal year limitations. All expenditures from said fund shall be only for the purposes of: (a) The payment of money to the claims administrator; (b) The payment of necessary expenses approved by the Board; (c) Administrative expenses. (Emphasis added) Were it not for the specificity of the Oklahoma Legislature in enumerating the permissible expenditures from the Fund, the creation of the Fund might be in question. See Wells v. Childers (Okl. 1945) 165 P.2d 371, 376. An additional consideration is whether a contract may be let which tends to bind the State of Oklahoma to an agreement to expend future fiscal year funds. Such a contract has consistently been held to be invalid and unenforceable. See Attorney General Opinion No. 79-99 for the latest expression with respect to multi-year contracts. Multi-year contracts are not, in and of themselves, invalid. The limiting feature of such contracts is the provision of the Oklahoma Constitution, Article X, Section 23, quoted in part as follows: "The State shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit, against the State, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as provided in this amendment and in Sections Twenty-four (24) and Twenty-five (25) of Article Ten (X) of the Constitution of the State of Oklahoma." The exceptions noted are not applicable here. See also Okl. Const. Article X, Section 26 restricting a subdivision of the State . . . to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year. . . Two restrictions exist with respect to contracts with a Claims Administrator for the Board: first, where the terms of the contract with a Claims Administrator are to be changed in any degree, e.g., terms of compensation, duration of contract, etc., the proposed contract must be subject to the bidding process through the Board of Public Affairs; second, the contract may not purport to bind the state to an agreement to appropriate funds in any subsequent fiscal year. It is the opinion of the Attorney General, therefore, that the State Employees Group Health and Life Insurance Board may offer and accept bids in the manner described in 74 O.S. 1306 [74-1306](3) (1977) and the applicable statutes governing central purchasing for the State provided the terms and conditions of such contracts are (1) not subject to change during the life of the contract and (2) do not purport to bind the State of Oklahoma to an agreement to appropriate funds in any subsequent fiscal year. (MANVILLE T. BUFORD) (ksg) ** SEE: OPINION NO. 91-577 (1991) (UNPUBLISHED) **